UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSEPH C. ROTONDI,

                Plaintiff,

      -against-

HARTFORD LIFE and ACCIDENT
GROUP,

               Defendant.

**MEMORANDUM OPINION
AND ORDER**

09 Civ. 6287 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

          In this action brought under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), Plaintiff Joseph C. Rotondi alleges that Defendant Hartford Life and Accident Group ("Hartford") wrongfully terminated his employer-sponsored long term disability ("LTD") benefits.  Plaintiff and Defendant filed cross motions for summary judgment on December 14, 2009.  (Docket Nos. 7 & 18)

          Plaintiff argues that Hartford's decision to terminate his LTD benefits was arbitrary and capricious because Hartford neglected to conduct an independent medical examination of him and rejected the findings of his treating physician.  Plaintiff further contends that Hartford's "dual role as both the administrator and payer of benefits" constitutes a conflict of interest, and that this conflict played a role in Hartford's benefit determination.  (Pltf. Br. 1)  Defendant argues that Plaintiff's claim is time-barred and that, in any event, the administrative record supports its decision to terminate Rotondi's LTD benefits.  (Def. Br. 2)  Because Rotondi's claim is in fact time-barred, and because he has failed to show that Hartford acted in an arbitrary and capricious manner in

terminating his LTD benefits, Defendant's motion for summary judgment will be GRANTED and Plaintiff's motion for summary judgment will be DENIED.

## BACKGROUND

Plaintiff was employed as a machinist by R.R. Donnelly & Sons Co. from February 1987 until October 2001 (Pltf. Rule 56.1 Stat. ¶ 1; Def. Rule 56.1. Stat. ¶ 1)[1] Machinist positions typically require two hours of sitting, three hours of standing, and less than 1 hour of walking per eight hour day and are categorized as "sedentary" and "light" work.  (Def. Rule 56.1 Stat. ¶¶ 2-3)  As part of his employment, Plaintiff was covered by a group long term disability insurance policy (the "LTD Plan") provided by Defendant under the R.R. Donnelly & Sons' Welfare Benefit Trust's employee welfare benefit plan.  (Id. ¶ 2; Def. Rule 56.1 Stat. ¶ 8)  The LTD Plan is governed by ERISA. Under the LTD Plan, Defendant has discretionary authority to determine eligibility for Plan benefits.  (Def. Counter Rule 56.1 Stat. ¶ 3; Pltf. Rule 56.1 Stat. ¶ 3)

Rotondi worked a block away from the World Trade Center, and was at work on September 11, 2001, the day of the terrorist attacks.  Rotondi suffered physical and psychological injuries (Pltf. Rule 56.1 Stat. ¶ 4), and he ceased working at R.R. Donnelly on October 9, 2001.  (Id. ¶22)  Defendant approved Rotondi's original claim for short term disability benefits for a knee injury he suffered on September 11, 2001 (Id. 5; Def. Rule 56.1. Stat. ¶¶ 20, 23), and he received short term disability benefits from

---

[1]  To the extent that this Court relies on facts drawn from Hartford's Rule 56.1 statement, it has done so because Rotondi has not disputed those facts or has not done so with citations to admissible evidence.  Where Plaintiff disagrees with Defendant's characterization of the cited evidence, and has presented an evidentiary basis for doing so, the Court relies on Plaintiff's characterization of the evidence.  See Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001) (court must draw all rational factual inferences in non-movant's favor in deciding summary judgment motion).

October 22, 2001 through April 14, 2002.  (Id. ¶ 23)  Plaintiff was also diagnosed with

post-traumatic stress disorder related to the events of September 11, 2001.  (Id. ¶ 21)

I.      **RELEVANT PROVISIONS OF THE LONG TERM DISABILITY PLAN**

Under the LTD Plan, "Disability" or "Disabled" is defined as:

(1) during the Elimination Period; and

(2) for the next 18 months, you are prevented by:

        a.  accidental bodily injury;
        b.  sickness;
        c.  Mental Illness;
        d.  Substance Abuse; or
        e.  pregnancy,

from performing one or more of the Essential Duties of Your Occupation, and as a result your Current Monthly Base Earnings are no more than 80% of your Indexed Pre-Disability Earnings.

After that, you must be so prevented from performing one or more of the Essential Duties of Any Occupation, and as a result your Current Monthly Base Earnings are no more than 60% of your Indexed Pre-disability Earnings. . . .

**Essential Duty** means a duty that:

(1) is substantial, not incidental;

(2) is fundamental or inherent to the occupation; and

(3) can not be reasonably omitted or changed.

(**Powell Decl., Ex. A at 0005**) (emphasis in original).  "**Mental Illness** means any

psychological, behavioral or emotional disorder or ailment of mind, including physical

manifestations of psychological, behavioral or emotional disorders, but excluding

demonstrable, structural brain damage."  The LTD Plan limits benefits for Mental Illness

to 18 months.  (Id. at 00013) (emphasis in original).

3

The LTD Plan's limitation of actions clause states that "[l]egal action cannot be taken against The Hartford:  (1) sooner than 60 days after Proof of Loss has been furnished; or (2) 3 years after the time written Proof of Loss is required to be furnished according to the terms of the Policy."  (Id. at 00017)  "Written Proof of Loss must be sent [] within 90 days after the start of the period for which we owe payment," and "may [be] request[ed] [] throughout your Disability.  In such cases, [Hartford] must receive the proof within 30 days of our request."  (Id. at 0016)  The LTD Plan defines "Proof of Loss" as "includ[ing] but [] not limited to the following":

  (1) Documentation of

        a.  the date your Disability began;
        b.  the cause of your Disability;
        c.  the prognosis of your Disability;
        d.  your Earnings or income, included but not limited to copies of
            your filed and signed federal and state tax returns; and
            evidence that you are under the Regular Care of a Physician;

  (2) any and all medical information, including x-ray films and photocopies
      of medical records, including histories, physical, mental, or diagnostic
      examinations, and treatment notes;

  (3) the names and addresses of all

        a.  Physicians and practitioners of healing arts you have seen or
            consulted;
        b.  hospitals or other medical facilities in which you have been
            seen or treated; and
        c.  pharmacies which have filled your prescriptions;
        d.  within the past three years;

  (4) your signed authorization for us to obtain and release:

        a.  medical, employment and financial information; and
        b.  any other information we may reasonably require;

  (5) your signed statement identifying all Other Income Benefits; and

4

> (6) proof that you and your dependants have applied for all Other Income Benefits which are available. . . .
>
> All proof submitted must be satisfactory to us.

(Id.)  The LTD Plan broadly provides that benefits are payable when, inter alia, a claimant "submit[s] proof of loss satisfactory to The Hartford."  (Id. at 00012)

## II.     **PLAINTIFF'S INITIAL CLAIM FOR BENEFITS**

Defendant approved Plaintiff's initial claim for LTD benefits on April 16, 2002, "finding that the medical information provided by Rotondi supported his claim that he was disabled from performing his own occupation."  (Def Rule 56.1 Stat. ¶ 40; Pltf. Rule 56.1 Stat. ¶ 5)  Nicholas G. Stratigakis, M.D., submitted an Attending Physician Statement in support of Rotondi's claim for LTD benefits, indicating that Rotondi suffered from a torn meniscus in his left knee.  (Def. Rule 56.1 Stat. ¶ 39)  On July 16, 2002, Plaintiff underwent arthroscopic surgery on his left knee to repair the torn meniscus.  (Pltf. Rule 56.1 Stat. ¶ 9)  On April 8, 2003, an MRI revealed "a tear of the anterior talofibular ligament, a small corical avulsion at the antrolateral aspect of the tibia, moderate peroneal tendon synovitis and 1.5CM fluid signal intensity."  (Id. ¶ 11)  In a June 27, 2003 Employability Analysis report, Hartford found that "Mr. Rotondi does not possess the transferable skills to perform any occupations based upon this analysis."  (Def. Counter-Rule 56.1 Stat. ¶ 6 (citing Powell Decl., Ex. B at 000467-68))

Dr. Panagiotis Zenetos treated Plaintiff for his physical injuries from June 2004 until at least September 2007.  (Pltf. Rule 56.1 Stat. ¶ 13; Def. Counter-Rule 56.1. Stat. ¶ 13)  In addition to monthly office visits, Dr. Zenetos prescribed physical therapy and periodic MRIs.  (Pltf. Rule 56.1 Stat. ¶ 14)

On April 8, 2007, Hartford arranged for Dr. Robert Pick of the Medical Advisory Group to review Plaintiff's medical records and certain video surveillance footage of Rotondi,[2] and to issue a report concerning his functional capacities. Dr. Pick did not examine Plaintiff, and his efforts to speak with Dr. Zenetos were unsuccessful.[3] (Id. ¶¶17-20)  Dr. Pick concluded that Rotondi "[was] quite functional from the orthopedic perspective, and is not restricted from performing full time work," with the following limitations:

> Restrictions would be on extensive walking, and repetitive bending, twisting, kneeling and squatting.  Lifting would be restricted to no more than 40 pounds.  However, these are only initial, temporary restrictions and they are reasonable for initial return to work since Mr. Rotondi apparently has been out of work for many years.  Within a few weeks return to work, these restrictions will likely not be necessary.

(Def. Rule 56.1 Stat. ¶ 190; Pltf. Rule 56.1 Stat. 26)

On May 1, 2007, Defendant notified Rotondi that his medical records no longer demonstrated that he was suffering from a physical disability under the LTD Plan, and that "no further benefits are payable to you for your physical condition beyond April 30, 2007."  (Powell Decl., Ex. B at 000810)  The termination letter stated:

> There were noted inconsistencies between your interview statement and your observed functionality during surveillance and during your interview with Mr. Elliot.  Specifically, you described your gait as slow but were observed walking in a normal fluid manner.  You also stated that you needed to hold onto something when you bend at the

---

[2]  Hartford contracted for HUB Enterprises and the Robinson Group to conduct video surveillance of Rotondi on April 15 and 16, 2006, and May 3 and 4, 2006, respectively. (Pltf. Rule 56.1 Stat. ¶¶ 21-24)  Based on a review of this video surveillance, Hartford concluded that Rotondi appeared to ambulate in a normal manner on all four days.  (Id. ¶ 25)

[3]  Dr. Pick contacted Dr. Zenetos on four occasions between March 30, 2007, and April 5, 2007, in an effort to discuss Rotondi's condition.  He also left three voice messages with Dr. Zenetos to that effect.  (Def. Rule 56.1 Stat. ¶ 186)

> waist, but were not observed holding onto anything for balance while you bent at the waste to spray your house/sidewalk.  You also stated that you had difficulty entering/exiting your vehicle, however you were observed entering/exiting your vehicle in a normal, fluid manner.

(Def. Rule 56.1 Stat. ¶ 194 (citing Powell Decl., Ex. B at 000809)).  The letter also set forth Dr. Pick's findings concerning Plaintiff's physical condition and noted Dr. Zenetos' non-responsiveness.  (Id. ¶ 195)

While the May 1, 2007 letter stated that Rotondi would no longer receive LTD benefits as a result of his physical condition, the letter informed Rotondi that he remained disabled under the LTD Plan because of his psychiatric condition, and that he would continue to receive benefits after April 30, 2007, as a result of his mental illness. The letter made clear, however, that the LTD Plan imposed an 18-month limit on benefits payable as a result of mental illness, and that accordingly "no further benefits will be issued beyond October 31, 2008," when the 18-month limit was reached.  (Pltf. Rule 56.1 Stat. 15-16; Def. Rule 56.1 Stat. ¶ 193)The letter also informed Plaintiff of his right under ERISA to appeal the LTD benefit determination within 180 days of his receipt of the termination letter.  (Id. ¶ 197)

## III.   PLAINTIFF'S ADMINISTRATIVE APPEAL

By letter dated September 17, 2007, Plaintiff appealed the May 1, 2007 termination decision.  (Pltf. Rule 56.1 Stat. ¶ 28; Def. Rule 56.1 Stat. ¶ 199)  Plaintiff's letter of appeal stated:

> Attached you will see various reports concluding and pointing out numerous reasons why I cannot work for the rest of my life due to the chronic condition.  I have osteoarthritis in my left knee and ankle.  I have four bulging disks in my lower back.  My right hip is also causing me a lot of pain.  I never sleep through the night.  I also wear an unloading device-brace when needed.  I cannot wear this brace for long periods of time because it irritates the skin that it touches.

7

(Def. Rule 56.1 Stat. ¶ 200; see also Pltf. Rule 56.1 Stat. 29)  In support of his appeal,

Plaintiff submitted recent MRI reports concerning his right hip and lumbar spine, and Dr.

Zenetos's office notes dated May 15, 2007, June 19, 2007, and September 4, 2007. (Def.

Rule 56.1 Stat. ¶ 201(citing Powell Decl., Ex. B at 000152-155; 000157-162)).  The

MRIs "revealed mild broad-based bulging" of the lumbar spine, an "annular tear" in the

posterior annulus, "suspicion for focal undersurface degeneration of the superior labrum,"

and evidence of "slight insertional tendinosis at the anterior aspect of the greater

trochanter."  (Pltf. Rule 56.1 Stat. ¶¶ 30-33)

        On October 8, 2007, Hartford Appeal Specialist James A. Powell provided

Plaintiff's medical records to an independent medical review consultant, Dr. William

Andrews, who submitted a report on October 18, 2007.  (Def. Rule 56.1 Stat. ¶ 213

(citing Powell Decl., Ex. B at 000186-89)).  Dr. Andrews reviewed the following

materials:

- Video surveillance of Rotondi from April 15 and 16, 2006, and May 3 and 4, 2006;
- Dr. Menezes's office notes from October 18, 2002 through December 18, 2002;
- Dr. Stratigakis's office and work notes from April 20, 2001 through September 6, 2002;
- Dr. Hashmi's office and work notes from January 10, 2003 through August 6, 2007;
- Ms. Evanier's office notes from May 7, 2002 through April 11, 2003;
- Dr. Menezes's operation note dated July 16, 2002;
- Dr. Zenetos's office notes from May 15, 2004 through September 24, 2007;
- Rotondi's left knee MRI report dated April 28, 2005;
- Rotondi's left knee and hip x-ray report dated September 13, 2006;
- Rotondi's left hip MRI report dated June 6, 2007; and
- Rotondi's lumbar MRI report dated July 3, 2007.

(Id. ¶ 214).[4]  On October 15, 2007, Dr. Andrews also discussed Plaintiff's claim with Dr.

Zenetos's assistant.  (Id. ¶ 215)

In Dr. Andrews's October 15, 2007 report, he described Plaintiff's

physical condition as

> that of a person with a meniscal tear in his right knee with early arthritis
> (mild to moderate), chronic synovitis/tendonitis of the left ankle and mild
> degenerative disc disease in the lumbar spine. He has had an arthroscopy
> of the left knee on 07/16/2002, without apparent complication. Based on
> the records sent for review the claimant is able to work at the light level
> from an orthopedic perspective.

(Id. ¶ 216 (citing (Powell Decl., Ex. B at 000187-88)).

Dr. Andrews stated that Rotondi's work activities should be limited as

follows:

- lifting limit of 30-35 pounds, carrying limit of 20 pounds;
- standing, walking limit of 60 minutes at a time;
- occasional overhead activity;
- minimal repetitive bending, twisting, stooping, crawling;
- ability to change positions every 90 minutes as needed for comfort.

(Id. ¶ 217 (Powell Decl., Ex. B at 000188)).

Dr. Andrews concluded that there was "not sufficient evidence to preclude

Mr. Rotondi from performing a sedentary or light occupation":

> Physically, Mr. Rotondi's complaints are not significant and his video
> shows a similar picture.  His complaints of knee, ankle, and back pain
> are those which would afford him some limitations as described
> above, but would not keep him completely out of work.
> Orthopedically, he is completely safe to function at the above limits
> and could have returned to them three months after his [arthroscopic]
> surgery.  There is nothing in his medical records since the surgery, which
> would place him at a lower level of activity, nor is there evidence of

---

[4]  Dr. Menezes was Rotondi's treating physician in 2002 and 2003.  (Pltf. Rule 56.1 Stat.
¶¶ 7-12)  Dr. Hashmi is Rotondi's psychiatrist and Dimi Evanier was Rotondi's
psychotherapist.  (Def. Rule 56.1 Stat. ¶¶ 65, 159)

any significant limitations on his surveillance video.

(Def. Rule 56.1 Stat. ¶ 220 (citing Powell Decl., Ex. B at 000188-89)).

On October 22, 2007, Powell recommended that Plaintiff's appeal be

denied:

> Based upon the above-noted review in conjunction with all other information contained in the file, the weight of the evidence fails to support Mr. Rotondi's inability to perform any occupation due to a physical condition.  The surveillance documented normal functionality and neither Dr. Pick nor Dr. Andrews found sufficient evidence of a significant physical impairment based upon their reviews of the medical records.  Although Dr. Andrews denotes light work capacity which is different from Dr. Pick who denoted medium, there appears to be no reason to preclude medium level work.  It is noted that the prior vocational analysis determined that Mr. Rotondi's own occupation was the most appropriate and having reviewed the physical demands analysis on file it shows that his job is actually considered light duty.  Therefore, either opinion would allow Mr. Rotondi to work in his own/any occupation.  While it is not disputed that Mr. Rotondi has limitations that prevent him from working, the limitations appear to be primarily the result of a mental illness and as such his claim remains limited to a maximum of 18 months.

(Id. ¶ 221 (Powell Decl. Ex. B at 000058-59); see also Pltf. Rule 56.1 Stat. ¶¶ 34-35).

By letter dated October 22, 2007, Powell notified Rotondi of Hartford's

decision to deny his appeal of the decision terminating his LTD benefits.[5] (Def. Rule 56.1

Stat. ¶ 222 (citing Powell Decl., Ex. B at 000184-85); Pltf. Rule 56.1 Stat. ¶ 34)

## DISCUSSION

In his motion for summary judgment, Rotondi argues that Hartford's

decision to terminate his LTD benefits was arbitrary and capricious in that Hartford failed

---

[5]  Plaintiff attempted to re-appeal on November 12, 2008, after his mental disability benefits expired.  Hartford informed Rotondi in a November 29, 2008 letter that he had exhausted his administrative remedies and that Defendant's October 22, 2007 decision was final.  (Powell Decl. Ex. B at 0028-29, 0145)

to (1) arrange for an independent physical examination, and (2) give adequate weight to the findings of Rotondi's treating physician.  Rotondi further contends that Hartford's role as both administrator and funder of benefits constitutes a conflict of interest, and that this conflict of interest led to a termination decision that constitutes an abuse of discretion.  (Pltf. Br. 1)

Hartford argues that it is entitled to summary judgment because (1) Rotondi's claim is barred by the LTD Plan's three-year limitation of actions provision, and (2) in any event, Rotondi has not demonstrated that Hartford's decision to terminate his LTD benefits was arbitrary and capricious.  As discussed below, this Court concludes that Hartford is correct on both counts.

## I        SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Whether facts are material is a determination made by looking to substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Whether "[a] dispute about a genuine issue exists" depends on whether "the evidence is such that a reasonable jury could decide in the non-movant's favor."  Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (internal quotation marks omitted).  Courts "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment."  Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001).

"In moving for summary judgment against a party who will bear the ultimate burden of proof at trial," as in the current case, "the movant may satisfy this

11

burden by pointing to an absence of evidence to support an essential element of the

nonmoving party's claim." Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996)

(citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).  The non-movant "cannot

avoid summary judgment simply by asserting a 'metaphysical doubt as to the material

facts,'" Woodman v. WWOR-TV, Inc., 411 F.3d 69, 75 (2d Cir. 2005) (quoting

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)), and "may

not rely on mere conclusory allegations nor speculation, but instead must offer some hard

evidence showing that [his] version of the events is not wholly fanciful." Golden Pac.

Bancorp v. FDIC, 375 F.3d 196, 200 (2d Cir. 2004) (quoting D'Amico v. City of New

York, 132 F.3d 145, 149 (2d Cir. 1998)).

## II.     THE LTD PLAN'S LIMITATION OF ACTIONS
##         CLAUSE BARS PLAINTIFF'S LAWSUIT

          The LTD Plan provides that claimants may not commence lawsuits more

than "three years after the time written Proof of Loss is required to be furnished

according to the terms of the Policy," with proof of loss for continuing disability claims

due within 30 days of Hartford's request for supporting information.  (Powell Decl. Ex. A

at 0016-17)  Hartford's last request to Rotondi for proof of loss information related to his

physical disability benefits under the LTD Plan was made on January 26, 2006.

Accordingly, Hartford argues that the Plan's three-year limitation of action period began

running on February 26, 2006, and expired on February 26, 2009.  (Def. Br. at 14)

Because the instant action was not filed until July 14, 2009, Hartford argues that

Rotondi's suit is time-barred.

          ERISA "does not prescribe a limitations period for 29 U.S.C. § 1132

actions" to enforce rights to benefits.  Burke v. PricewaterhouseCoopers LLP, Long Term

Disability Plan, 572 F.3d 76, 78 (2d Cir. 2009).  "Therefore, the applicable limitations period is 'that specified in the most nearly analogous state limitations statute,'" unless a "shorter time is prescribed by written agreement."  Id.  While the Second Circuit has stated that the six-year limitation period provided for contract actions under CPLR § 213 "applies[,] as [§ 213] is most analogous to §1132," Burke makes clear that the parties are free to contract to a shorter limitations period.  Id.; see also Scheirer v. NMU Pension & Welfare Plan, 585 F. Supp. 76, 78 (S.D.N.Y. 1984) (holding that plaintiff was bound by benefit plan's two-year-and-ninety-day limitation period on benefit claims).  Indeed, the Supreme Court has stated that "it is well established that, in the absence of a controlling statute to the contrary, a provision in a contract may validly limit, between the parties, the time for bringing an action on such contract to a period less than that prescribed in the general statute of limitations, provided that the shorter period itself shall be a reasonable period."  Order of United Commercial Travelers v. Wolfe, 331 U.S. 586, 608 (1947); see also Kraynak v. Fin. Accounting Found. Long Term Disability Plan, 2006 U.S. Dist. LEXIS 89280 (D. Conn. Nov. 29, 2006)

"ERISA [] confer[s] upon plans substantial power to set their terms . . . [and] '[p]lan sponsors, not federal courts, are empowered by ERISA to adopt, modify, or terminate welfare plans,' [based on] 'the well-established principle that plans can craft their governing principles as they think best.'"  White v. Sun Life Assur. Co., 488 F.3d 240, 246 (4th Cir. 2007) (citing Gayle v. UPS, 401 F.3d 222, 228 (4th Cir. 2005) (quoting Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 78 (1995) (internal quotations omitted))).  That a Plan's limitation period may start running before a plaintiff has exhausted his administrative remedies – a prerequisite to challenging a benefits

13

determination in court – is irrelevant.  The Second Circuit – joining four other circuits –

has held that "written plan terms including limitations periods which may begin to run

before a claimant can bring legal action" are to be enforced by reviewing courts.  Burke,

572 F.3d at 81.

   Here, Rotondi does not dispute either that the three-year limitation of

action period set forth in the LTD Plan applies to his action or that it is binding.[6]  Instead,

he argues that the Plan's limitation of action provision is ambiguous because "defendant

does not clarify which Proof of Loss request controls."  (Pltf. Opp. 9)  As noted above,

Hartford contends that the limitation period began to run on February 26, 2006 – thirty

days after it made its last request for proof of loss information concerning Rotondi's

physical disability.  Rotondi argues, however, that the limitation period began to run on

August 31, 2007 – thirty days after Hartford made its last request for information

concerning Rotondi's mental disability.  (Id.)

   This Court concludes that the only reasonable reading of Hartford's July

31, 2007 proof of loss request is that it relates to Rotondi's mental disability.  It is

undisputed that on May 1, 2007, Hartford notified Rotondi in writing that his physical

---

[6]  Courts in this circuit have consistently enforced ERISA plan limitation of actions
language nearly identical to that at issue here.  See, e.g., Kraynak v. Fin. Accounting
Found. Long Term Disability Plan, 2006 U.S. Dist. LEXIS 89280, at *1 (D. Conn. Nov.
29, 2006) (holding that plan language stating that "[n]o action may be brought after three
(3) years . . . from the time written proof of loss is received" was enforceable and barred
plaintiff's action); Scheirer v. NMU Pension & Welfare Plan, 585 F. Supp. 76, 78
(S.D.N.Y. 1984) (holding that plaintiff was bound by the two-year-and-ninety-day
limitation period on his benefit claim).  In Burke, 572 F.3d 76, which involved a
Hartford-administered LTD plan, the Second Circuit found enforceable a limitation
provision barring a legal action brought more than "three years after written Proof of
Loss is to be furnished."  Id. at 79.

disability benefits under the LTD Plan would be terminated, but that he would continue

to receive benefits "based upon the [LTD Plan's] provisions for disabilities caused by a

mental/nervous condition."  (Powell Decl., Ex. B at 00805).  Accordingly, the July 31,

2007 proof of loss request could only have referred to Rotondi's mental disability.  (Id.,

Ex. B at 0034)  That the parties continued to communicate about Plaintiff's psychological

condition does not alter the fact that Hartford's last proof of loss request concerning

Plaintiff's physical disability was made on January 26, 2006; that Plaintiff had thirty days

to respond to that request; and that the deadline for bringing a legal action under the LTD

Plan is "3 years after the time written Proof of Loss is required to be furnished."  (Id., Ex.

B at 0016-17)

   Application of the LTD Plan's limitations period works no unfairness

here.  Plaintiff had nearly five months after the denial of his appeal to file a timely civil

suit and failed to do so.

   Because Plaintiff's lawsuit is barred by the Plan's limitation of actions

clause, Hartford is entitled to summary judgment.

**III.** **PLAINTIFF HAS NOT DEMONSTRATED THAT DEFENDANT'S
   BENEFIT DETERMINATION WAS ARBITRARY AND CAPRICIOUS**

   Even if Rotondi's claims were not time-barred they would still fail,

because he has not demonstrated that Defendant's termination decision was arbitrary and

capricious.

   "[A] denial of benefits challenged under [ERISA] must be reviewed under

a de novo standard unless the benefit plan gives the administrator or fiduciary

discretionary authority to determine eligibility for benefits or to construe the terms of the

plan."  Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  Where a

15

claim administrator has discretionary authority, courts "will not disturb the administrator's ultimate conclusion unless it is 'arbitrary and capricious.'" Hobson v. Metropolitan Life Ins. Co., 574 F.3d 75, 82 (2d Cir. 2009).  Here, the parties agree that the LTD Plan grants Hartford discretion – stating that "all proof [of loss] must be satisfactory to us" – and that Hartford's benefit determinations should be reviewed under the arbitrary and capricious standard.  (Pltf. Br. at 9; Def. Op. at 5; Def. Br. at 16)

Under this standard, the determination of the Plan administrator must be upheld unless it is "without reason, unsupported by substantial evidence or erroneous as a matter of law." Kinstler v. First Reliance Standard Life Ins. Co., 181 F.2d 249 (2d Cir. 1999).  "'Substantial evidence' is 'such evidence that a reasonable mind must accept as adequate to support the conclusion reached by the [decision-maker and] requires more than a scintilla of evidence but less than a preponderance.'" Miller v. United Welfare Fund, 72 F.3d 1066, 1071 (2d Cir. 1995) (quoting Sandoval v. Aetna Life & Cas. Ins. Co., 967 F.2d 377, 382 (10th Cir. 1992).  "'Absent a showing of bad faith or arbitrariness, the court will not disturb [the administrator's] interpretations of [the] plan as long as they are consistent with the plan's terms and purpose.'" Sansevera v. DuPont de Nemours & Co., 859 F. Supp. 106, 112 (S.D.N.Y. 1994) (quoting Seff v. NOITU Ins. Trust Fund, 781 F.Supp. 1037, 1040 (S.D.N.Y. 1992).  Where both parties "offer rational, though conflicting, interpretations of plan provisions, the [administrator's] interpretation must be allowed to control." Pulvers v. First Unum Life Ins., Co., 210 F.3d 89, 92-93 (2d Cir. 2000).[7]

---

[7] The Court considers only the evidence contained in the administrative record below. See Bergquist v. Aetna U.S. Healthcare, 289 F. Supp 2d 411, 410 (S.D.N.Y. 2003);

That a plan administrator may labor under a conflict of interest does not alter the standard of review. Here Hartford has a conflict of interest, because it both determines the validity of an employee's claims under the LTD Plan and is responsible for paying benefits to Plan claimants. See Metropolitan Life Ins. v. Glenn, 554 U.S. 105 (2008). Even where a conflict of interest exists on the part of the claim administrator and can be shown to have influenced the plan administrator's benefits determination, however, the standard of review remains the same. As the Second Circuit has explained, "a plan under which an administrator both evaluates and pays benefits claims creates the kind of conflict of interest that courts must take into account and weigh as a factor in determining whether there was an abuse of discretion, but does not make de novo review appropriate. This is true even where the plaintiff shows that the conflict of interest affected the choice of a reasonable interpretation." McCauley v. First Unum Life Ins. Co., 551 F.3d 126, 133 (2d Cir. 2008).

## A.  **Hartford Conducted a Full and Fair Review of Rotondi's Claim**

As claimant, Rotondi bears the burden of demonstrating that he qualifies for physical disability benefits under the Plan by meeting its definition of physical disability – i.e., that he is incapable of performing the material and substantial duties of "any occupation." (Powell Decl., Ex. A at 0005, 0104)  See Gannon v. Aetna Life Ins. Co., No. 05 Civ. 2160(JGK), 2007 WL 2844869, at *11 (S.D.N.Y. Sept. 28, 2007) (citing Juliano v. Health Maintenance Org. of New Jersey, 221 F.3d 279, 287-88 (2d Cir. 2000)).

---

Glavan v. Building Service 32V-J Health Fund, No. 96 Civ. 4145 (SHS), 1997 WL 381789. at *2 (S.D.N.Y. July 10, 1997) (quoting Vursanaj v. Building Serv. 32B-J Health & Pension Fund, No. 93 Civ. 6676, 1995 WL 590616, at *3 (S.D.N.Y. Oct. 4, 1995) ("In the context of a motion for summary judgment, the court must review the Trustees' decision in light of the pleadings and the record before the Trustees.")).

Hartford determined that Rotondi failed to meet this burden.  Plaintiff's assertions that Hartford improperly ignored the evidence from Rotondi's treating physician, as well as Rotondi's own account of his physical condition, are not persuasive.

First, the record demonstrates that Hartford considered both the submissions of Dr. Zenetos and Plaintiff's account of his physical condition, relayed in interviews and in questionnaires.  Indeed, in its termination letter, Hartford explicitly addressed both Dr. Zenetos's findings and Plaintiff's description of his physical condition.  (Powell Decl., Ex. B at 269, 000254)

Second, while "ERISA and the Secretary of Labor's regulations under the Act require 'full and fair' assessment of claims and clear communication to the claimant of the 'specific reasons' for benefit denials, [] these measures do not command plan administrators to credit the opinions of treating physicians over other evidence relevant to the claimant's medical condition."  Black & Decker Disability Plan v. Nord, 538 U.S. 822, 825 (2003) (citing 29 U.S.C. § 1133 ; 29 CFR § 2560.503-1 (2002); 29 U.S.C. 1133(2) (every employee benefit plan must "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim")).  "Therefore, when faced with a conflict between the opinion of the treating physician and the opinions of reviewing doctors and independent consultants, it is not arbitrary and capricious for the plan to prefer the reviewing doctors."  Greenberg v. Unum Life Ins. Co., No. 03 Civ.1396 (CPS), 2006 WL 842395, at *10 (E.D.N.Y. March 27, 2006) (citing Maniatty v. Unumprovident Corp., 218 F. Supp. 2d 500, 504 (S.D.N.Y. 2002)).  Similarly, "[a]n insurance company must be allowed to employ a system which will prevent awarding

benefits to those whose symptoms are exaggerated or faked.  As such, it is reasonable for the company to prefer objective verifiable evidence over the self-reported symptoms of the insured."  Id. (citing Maniatty, 218 F. Supp. 2d at 504 (administrators' decisions are not arbitrary and capricious where "they demand objective evidence" and refuse to rely solely on "subjective statement[s] of pain")).

Moreover, Plaintiff has cited no evidence suggesting that Hartford's decision to give greater weight to the opinion of reviewing doctors Pick and Andrews was unreasonable or irrational, or that Hartford improperly refused to consider Plaintiff's evidence.  Both Dr. Pick and Dr. Andrews, for example, reviewed all of the "voluminous [medical] records provided, as well as [the] surveillance videos," and Dr. Pick contacted Dr. Zenetos on four separate occasions to discuss Plaintiff's condition.  (Powell Decl., Ex. B at 0271-72)  Moreover, Rotondi's "subjective accounts of physical pain were consistently undermined by his statements regarding his own functionality," such as his admissions that he siphoned water off his pool cover, loaded and unloaded the dishwasher, did laundry, helped put away groceries, coached and attended little league games, and played golf on several occasions in 2006.  (Def. Op. at 8-9; Powell Decl., Ex. B at 00403-411)  Rotondi also never asserted that he required physical assistance or that he needed special equipment to alleviate his pain.  (Powell Decl., Ex. B at 00405)  In short, the administrative record demonstrates that Hartford considered all of the relevant medical records and other evidence in making its benefit determinations. (Powell Decl., Ex. B at 000254 (termination letter), 000187 (Powell report)).[8]

--------

[8]  Plaintiff also argues that he receives benefits from the Social Security Administration ("SSA"), and that SSA's benefits determination supports his claim for long term physical

Plaintiff's argument that Hartford's failure to conduct an independent medical examination ("IME") of him prior to terminating his benefits demonstrates that its decision was arbitrary and capricious is similarly unavailing. (Pltf. Br. at 12-13) As the Second Circuit noted in <u>Hobson</u>, 574 F.3d at 91, "where the ERISA plan administrator retains the discretion to interpret the terms of its plan, the administrator may elect not to conduct an IME, particularly where the claimant's medical evidence on its face fails to establish that she is disabled." The <u>Hobson</u> court went on to explain that "by not ordering such an examination, [the administrator] simply exercised its discretion to decline to pursue one option at its disposal." <u>Id.</u> Such is the case here. Nothing in the Plan's terms obligated Hartford to perform an IME of Plaintiff. Hartford, in its discretion, decided that the medical evidence, including the reports and notes of Dr. Zenetos and the opinions of the two reviewing physicians along with the videotaped surveillance footage of Plaintiff[9] provided it with sufficient information to evaluate

---

disability. It appears that Rotondi never supplied Hartford with the terms of his SSA award, however, and it is not clear whether Social Security benefits are being provided in connection with Plaintiff's mental disability or physical condition. Even if Plaintiff's Social Security benefits are based on a finding that he suffers from a long term physical disability, "social security determinations are not binding on ERISA plan administrators." <u>Snyder v First Unum Life Ins. Co.</u>, No. 02 Civ. 889 (S), 2004 WL 178433, at *6 (W.D.N.Y. Aug. 6, 2004) (citing <u>Martin v. E.I. Dupont De Nemours & Co.</u>, 999 F. Supp. 416, 424 (W.D.N.Y. 1998)); <u>see also</u> <u>Suren v. Metropolitan Life Ins. Co.</u>, No. 07 Civ. 4439 (JG)(RLM), 2008 WL 4104461, at *10 (E.D.N.Y. Aug. 29, 2008).

[9] Defendant's use of videotape surveillance footage is in no way improper, as Plaintiff's citation to <u>Chan v. Hartford Life Ins. Co.</u>, 02 Civ. 2943 (LMM), 2004 WL 2002988 (S.D.N.Y. 2004), seems to suggest. Here, the surveillance footage was but one factor in Hartford's determination, and merely corroborated the opinions offered by Hartford's medical experts. In contrast, in <u>Chan</u>, the court found that the video footage at issue did not "clearly contradict" the conclusion of plaintiff's treating physician or support defendant's denial of benefits. <u>Id.</u> at *9. <u>Chan</u> did not hold that use of video surveillance footage by a plan administrator is inappropriate or a sign of arbitrary and capricious decision-making.

Plaintiff's LTD claim.  Plaintiff has not demonstrated that an IME was required to fairly evaluate his claim.

"Given that only a rational connection is necessary between the facts relied upon and the decision to deny benefits," Glavan, 1997 WL 381789, at *3, Defendant's termination of Rotondi's physical disability benefits under the LTD Plan was not arbitrary and capricious.  In light of the deferential standard of review, Plaintiff's burden to demonstrate his physical disability under the Plan, and Defendant's citation to substantial evidence supporting its determination, there is no basis for this Court to overturn Hartford's benefit decision.

**B.**     **There is No Evidence that Hartford's Conflict of Interest Influenced its Decision to Terminate Rotondi's Long Term Disability Benefits**

Plaintiff argues that Hartford's conflict of interest supports his claim that Hartford's benefit determination was arbitrary and capricious.  (Pltf. Br. 8-9)  As the Supreme Court has stated, where "a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion."  See Firestone Tire & Rubber, 489 U.S. at 115.

Here, however, Rotondi has failed to raise any material issue of fact as to whether Defendant's benefit determinations were influenced by its conflict of interest.  "The plaintiff is required to do more than make conclusory statements that the decision to deny the benefits was affected by a conflict of interest – she actually must show how the conflict affected the reasonableness of the plan administrator's decision."  Id.  Rotondi's briefing on this subject consists of no more than conclusory statements.  As this Court noted above, Hartford's decision to rely on the opinions of its reviewing physicians is not

21

irrational.  Nor is it suggestive of improper motive, particularly in light of the video

surveillance evidence.

Moreover, while a "conflict of interest . . . should prove more important

(perhaps of great importance) where circumstances suggest a higher likelihood that it

affected the benefits decision, [such as where] an insurance company administrator has a

history of biased claims administration, . . . [i]t should prove less important (perhaps to

the vanishing point) where the administrator has taken steps to reduce potential bias and

to promote accuracy."  Glenn, 554 U.S. 105, 128 S.Ct. 2343, 2352.  Here, Defendant has

submitted a declaration from Bruce Luddy, Director of Litigation and Appeals for

Hartford Life, explaining that

> [e]ach Appeals Specialist in Hartford's appeal unit is charged with making
> an independent assessment of the adverse claim decision . . . .During the
> Appeals Specialist's review . . . the individual responsible for the appeal
> does not discuss the merits of the claim with the original Claims Examiner
> who made the initial benefits determination. . . .

(Id. ¶¶ 9-10).  Luddy also affirms that the

> office of the Chief Financial Officer of Hartford, and its affiliate,
> subsidiary or parent companies, do not have any involvement and do not
> participate in claims decisions on disability benefits at any level.

(Id. ¶ 15)

James A. Powell, Manager in the Appeals Unit at Hartford Life, and the

employee responsible for denying Rotondi's appeal, has also affirmed that "[t]he decision

to deny plaintiff Rotondi's claim for continuing LTD benefits was not motivated by self-

interest or by a desire to avoid paying benefits.  Rather, the decision was based entirely

on the governing terms and provisions of the LTD Plan and the information contained in

the administrative record pertaining to Rotondi's claim for benefits." (Powell Decl. ¶ 6)

Rotondi has presented no evidence or reason to distrust that assertion.

## **CONCLUSION**

For the reasons stated above, Defendant's motion for summary judgment

(Docket No. 18) is GRANTED and Plaintiff's motion for summary judgment (Docket

No. 7) is DENIED. The Clerk of the Court is directed to terminate these motions and to

close this case.

Dated:  New York, New York          SO ORDERED.
        September 22, 2010

_____
Paul G. Gardephe
United States District Judge